FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)**

2013 JUN 21  P 4: 16

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| PROTECTION STRATEGIES, INCORPORATED, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| STARR INDEMNITY & LIABILITY COMPANY, | ) ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 1:13-cv-763 ( LO / IDD )

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Protection Strategies, Incorporated ("PSI"), by and through its attorneys, complains and moves for judgment against Defendant, Starr Indemnity & Liability Company ("Starr"), and respectfully alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for a declaratory judgment brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq.*; for damages for breach of contract; for insurance company bad faith; and for further necessary and appropriate relief.

2.      PSI is a global security management and consulting company, providing services to United States departments and agencies, as well as commercial, private, and international organizations and corporations. PSI purchased multiple "Resolute Portfolio for Private Companies" insurance policies from Starr to protect PSI and its directors, officers, and employees from liabilities and claims relating to, among other things, government investigations and other actions.

3.     PSI seeks to enforce its rights to the insurance coverage owed by Starr for past and future defense costs that PSI and its directors, officers, and employees have incurred, and continue to incur, in connection with investigations by government agencies, including (1) a Search and Seizure Warrant, subpoena duces tecum, and demand for administrative proceedings by the NASA Office of Inspector General ("NASA OIG Claim"), and (2) investigations by the United States Attorney for the Eastern District of Virginia, in conjunction with the United States Department of Justice, concerning PSI and its directors, officers, and employees for purposes of civil liability ("U.S. Attorney Civil Claim") (collectively, "the Claims").

## PARTIES

4.     PSI is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 2300 9th Street South, Suite 400, Arlington, Virginia 22204.

5.     On information and belief, Starr is a corporation organized and existing under the laws of the State of Illinois, with its headquarters and principal place of business at 399 Park Avenue, 8th Floor, New York, New York 10022.  Starr is licensed to and does transact business in the Commonwealth of Virginia and the Eastern District of Virginia, Alexandria Division.

## JURISDICTION AND VENUE

6.     Plaintiffs bring this action pursuant to 28 U.S.C. § 2201 and Rules 3 and 57 of the Federal Rules of Civil Procedure.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between PSI and Starr, and the amount in controversy exceeds $75,000, exclusive of interest, attorney's fees, and costs.

8.     This Court has personal jurisdiction over Starr because Starr transacts business in the Commonwealth of Virginia.

9.     Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1391(a) and (b), and Local Civil Rule 3(C), because Starr transacts business in the Eastern District of

2

Virginia, Alexandria Division, and the claims arose in whole or in part in the Eastern District of Virginia, Alexandria Division.

## THE INSURANCE POLICIES

10.     On or about February 6, 2011, Starr sold PSI a "Resolute Portfolio for Private Companies" insurance policy, Policy No. SISIFNL20064211 (the "2011 Policy"). The 2011 Policy covers the policy period between February 6, 2011 and February 6, 2012, and has a $5,000,000 aggregate limit of liability. Under the 2011 Policy, coverage for directors and officers liability ("D&O Coverage") has a limit of $2,000,000, subject to a retention under Insuring Agreements B and C in the amount of $15,000. A true and correct copy of the 2011 Policy is attached hereto as Exhibit A.

11.     On or about February 6, 2012, Starr sold PSI a "Resolute Portfolio for Private Companies" insurance policy, Policy No. SISIFNL20064212 (the "2012 Policy," and, together with the 2011 Policy, the "Policies"). The 2012 Policy covers the policy period between February 6, 2012 and February 6, 2013, and has a $5,000,000 aggregate limit of liability. Under the 2012 Policy, D&O Coverage has a limit of $2,000,000, subject to a retention under Insuring Agreements B and C in the amount of $15,000. A true and correct copy of the 2012 Policy is attached hereto as Exhibit B.

12.     The Policies are standard-form insurance policies drafted by Starr.

13.     The Policies contain many identical terms and conditions.

14.     The Policies define "**Company**" to mean, *inter alia*, "the **Parent Company**" or "any **Subsidiary** of the **Parent Company**." General Terms & Conditions § 2(c).

15.     The Policies define "**Parent Company**" as "the entity named in Item 1 of the Declarations." *Id.* at § 2(i).

16.     PSI is an insured under the Policies and the **Parent Company** named in Item 1 of the Declarations.

3

17.     PSI's directors, officers, and employees are insured persons under the Policies because they meet the definitions of "**Executives**" and/or "**Employees**."

18.     The Policies define "**Insured Person**" to mean any "(1) **Executive**; (2) **Employee**; or (3) **Outside Entity Insured Person**." D&O Coverage § 2(g). The Policies define "**Executive**" to mean, "any:  (1) past, present or future duly elected or appointed director, officer, trustee, governor, management committee **Member** or **Member** of the board of managers; (2) past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a foreign jurisdiction that is equivalent to an executive position listed in item (1) above; or (3) past, present or future general counsel and risk manager (or equivalent position) of the **Company**." *Id.* at § 2(e). The Policies define "**Employee**" to mean, *inter alia*, "any person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, . . . while that person is acting in the capacity as such." *Id.* at § 2(d)(1).

19.     Under Insuring Agreement B, the Policies obligate Starr to "pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against any **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, if the **Company** has indemnified the **Insured Person** for such **Loss**." *Id.* at § 1(B).

20.     Under Insuring Agreement C, the Policies further obligate Starr to "pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy." *Id.* at § 1(C).

21.     "**Defense Costs**" is defined to mean, *inter alia*, "reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**[.]" General Terms & Conditions § 2(d).

22. **"Loss"** is defined, in pertinent part, to mean "(1) damages, settlements or judgments; (2) pre-judgment interest; (3) costs or fees awarded in favor of the claimant; (4) punitive, exemplary or the multiplied portion of any multiple damages awards . . . to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages . . . and (6) **Defense Costs.**" D&O Coverage § 2(h), as amended by Endorsement 3.

23. **"Claim"** is defined to include, *inter alia*, "any: (1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**; (2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; . . . (4) formal civil, criminal, administrative or regulatory investigation of an **Insured Person**, which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying such **Insured Person** as a person against whom a proceeding identified in (2) . . . above may be commenced . . . ." D&O Coverage § 2(a).

24. **"Wrongful Act(s)"** is defined to include, *inter alia*, "(1) with respect to an **Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an **Insured Person** in his or her capacity as such or any matter claimed against an **Insured Person** by reason of such capacity;" and "(3)with respect to the **Company**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Company**." *Id.* at §§ 2(l)(1) and 2(l)(3).

25. The Policies remained in full force and effect throughout their respective Policy Periods.

26. PSI has paid all premiums due and has complied with all terms and conditions of the Policies and is entitled to all of the benefits of the Policies.

5

## INSURANCE COVERAGE DISPUTE

### A.     The NASA Office of Inspector General Claim

27.     On or about January 30, 2012, the NASA OIG Claim was instituted against PSI and a number of its current and former directors, officers and/or employees, when PSI received a Search and Seizure Warrant and a subpoena from the NASA Office of the Inspector General. The subpoena demanded, *inter alia*, "(2) All documents and records relating to contracting activities . . .; (3) All documents and records relating to business operation and management . . .; and (4) All documents and records relating to SBA 8(a) certification . . . ." The subpoena instructed that "[m]aterials identified should be produced by the date and time indicated on the subpoena" and that the "[f]ailure to appear at the time and place set forth in the subpoena will be taken as a failure to comply with the subpoena."

28.     On or about February 1, 2012, an agent for the NASA Office of the Inspector General, William Shores, conducted a search of PSI's headquarters and seized at least 262 boxes of documents, hard drives, and other materials related to the NASA OIG Claim.

29.     Certain of PSI's current or former directors, officers and/or employees were informed that they were the subject of the NASA OIG Claim as well.  Those individuals included Keith Hedman (CEO), David Sanborn (President), David Lux (CFO), and Joseph Richards (President of PSI's subsidiary).  In addition, Joan Apatoff, Loik Henderson, and Brian Bickmore were informed that each may be questioned in connection with the government investigation.  All of these individuals (collectively, the "Individuals") are insureds under the Policies.

30.     This investigation, coordinated with the United States Attorney for the Eastern District of Virginia, includes a criminal aspect with both PSI and the Individuals as subjects of the proceedings.  On February 10, 2012, PSI sent notice of the NASA OIG Claim to Starr.  The notice was acknowledged by Starr on February 10, 2012.  Starr requested that PSI also provide notice to its claims handler, LVL Claims Services, LLC ("LVL"), despite the fact that the

Policies expressly provide that notice of a "Claim" is properly addressed to the "Insurer." *See* General Terms & Conditions § 5. PSI forwarded the notice to LVL on February 24, 2012.

**B.**     **The United States Attorney Civil Claim**

31.     On or about June 14, 2012, PSI received a letter from the United States Attorney for the Eastern District of Virginia, which notified PSI that the United States Attorney for the Eastern District of Virginia, in conjunction with the United States Department of Justice, Civil Division, is investigating PSI "for purposes of civil liability."

32.     The letter stated that the United States Attorney for the Eastern District of Virginia, "together with the United States Department of Justice, Civil Division is investigating the relationship between Protection Strategies, Inc. ('PSI') and Security Assistance Corporation ('SAC') and their participation in the Small Business Administration Section 8(a) program for purposes of civil liability." *Id.*

33.     On June 21, 2012, PSI provided notice to Starr of the U.S. Attorney Civil Claim, and provided Starr with a copy of the letter from the United States Attorney for the Eastern District of Virginia. A true and correct copy of the June 21, 2012 notice letter is attached hereto as Exhibit C.

34.     PSI's counsel, Dickstein Shapiro LLP, has coordinated the response to the Claims against Starr's insureds, including PSI and its current or former directors, officers and/or employees. Each of the Individuals are represented by other counsel. Counsel have provided documents and responded to inquiries and requests from the United States Attorney for the Eastern District of Virginia.

**C.**     **Starr's Improper Refusal to Provide Coverage for the Claims**

35.     On March 30, 2012, Starr, through LVL, sent PSI a reservation of rights letter. Among other things, the reservation of rights letter acknowledged that PSI and the current and former Executives and Employees are "Insureds" under the Policies. A true and correct copy of the March 30, 2012 reservation of rights letter is attached hereto as Exhibit D.

36.     In the letter, Starr reiterated that it would participate in the defense of the NASA

OIG Claim, which was a critical agreement that permitted PSI and the Individuals to share

privileged information with Starr.  Starr did not inform PSI that it would deny reimbursement for

Defense Costs directly incurred by PSI. *See* Ex. D.

37.     PSI provided Starr with information regarding defense counsel for PSI and its

directors, officers, and employees.

38.     On or about April 10, 2012, Starr approved the earlier retention of the defense

counsel representing PSI and its directors, officers, and employees without requesting any

changes in the make-up of the counsel appointed for the defense.

39.     PSI also wrote several letters to Starr to ensure that privilege was properly

maintained and that Starr had no conflict with the representation for PSI and its directors,

officers, and employees before providing additional information to Starr.  Starr agreed that any

information provided by PSI to Starr would be privileged and treated accordingly based on the

understanding that Starr had agreed to participate in the defense of PSI and its directors, officers,

and employees subject to the Claims.

40.     Since April 2012, PSI has provided Starr with invoices for all Defense Costs

incurred as part of the coordinated response to the Claims, and continues to provide invoices as

they are received.

41.     Despite PSI's timely submission of invoices, Starr has refused, and continues to

refuse, to pay for the complete Defense Costs incurred in PSI's coordinated response to the

Claims.  Starr has refused to pay any Defense Costs incurred to defend PSI, and has only made

partial Defense Cost payments for certain Individuals.  Starr's improper refusal to pay Defense

Costs continues despite LVL's admission that the NASA OIG Claim is a "Claim" as defined by

the Policies.  PSI has written numerous letters identifying the clear bases and language

establishing coverage under the Policies.  In addition, PSI has corrected Starr's incorrect

assertions in denying coverage and outlined why Starr's refusal to provide coverage is improper

and incorrect.

42.     On May 10, 2012, LVL sent correspondence to PSI again acknowledging coverage for the Defense Costs incurred by PSI's directors, officers, and/or employees. A true and correct copy of the May 10, 2012 letter is attached hereto as Exhibit E.

43.     Starr incorrectly asserted that the respective counsel for PSI and its directors, officers, and employee were not approved, despite Starr's earlier approval. Further, Starr refused to reimburse Defense Costs directly incurred by PSI, despite Starr's recognition that the NASA OIG Claim constituted a "Claim" under the 2011 Policy, at least with respect to the Individuals. Starr had no legitimate basis to deny Defense Costs to PSI.

44.     Despite this acknowledgement and the processing of a check for reimbursement of Defense Costs incurred for $86,866.86, Starr failed to pay more than $387,700 based on incorrect assertions that the respective defense counsel for PSI and the directors, officers, and employees were not approved and that there was no "Claim" against PSI. In addition, Starr purported to make several incorrect "deductions." *See* Ex. E.

45.     Starr's purported rationale for the "deductions" included assertions that PSI incurred costs "pre-tender" of notice, that other deductions would be applied for "overhead," and that Defense Costs incurred by PSI, as opposed to the individual directors, officers, and/or employees, would not be covered. Starr advanced these arguments despite acknowledging its receipt of notice fourteen (14) days prior to Starr's new arbitrary "tender" date, and did not explain the other deductions. *See id.* at 2.

46.     On or about June 21, 2012, PSI sent Starr a letter addressing the incorrect assertions and arbitrary deductions from the reimbursement owed to PSI. *See* Ex. C. In its correspondence, PSI clarified that notice was actually provided to Starr on February 10, 2012, which was more than sufficient to satisfy the notice provision. Further, PSI highlighted that Starr's arbitrary deductions had no basis, especially in light of the fact that Starr had already acknowledged that the NASA OIG Claim (initiated by the Search and Seizure Warrant, subpoena, and notification to target individuals) is a "Claim" under the Starr Policy. Finally, PSI informed Starr that the Defense Costs incurred by PSI were not only in response to the subpoena

and Search and Seizure Warrant, but were also incurred as part of the coordinated effort to respond.

47.     Starr included in its "deductions" certain fees for "overhead" based on Starr's unilateral billing guidelines, which were never included as part of the Policies purchased by PSI. Starr had never provided any such billing guidelines to PSI, and had already approved the counsel for PSI and its directors, officers, and employees. Only after approving counsel did Starr reference these guidelines in a post-hoc attempt to deny coverage. Starr is now seeking to unilaterally incorporate these guidelines and alter the clear language of the Policies.

48.     Despite PSI's further explanations about the Defense Costs incurred, Starr continued to delay and failed to pay PSI for Defense Costs. Since PSI's June 21, 2012 correspondence, Starr has continued to raise the same incorrect assertions and has continued to apply improper, incorrect, and arbitrary deductions. Starr has done so to PSI's detriment, despite PSI's numerous requests for coverage, which is owed under the Policies.

49.     For the past eleven months, Starr has continued to delay paying PSI for Defense Costs covered under the Policies and has denied PSI a large portion of the coverage to which it is entitled under the Policies. In response to Starr's repeated wrongful assertions, PSI has written more than nine letters requesting that Starr pay Defense Costs for the Claims against PSI and its Executives and Employees.

50.     To date, the Defense Costs for PSI and the Executives and Employees now total at least $950,086.05, and continue to accrue. Starr, however, has only paid a portion of these Defense Costs, despite Starr's March 2012 recognition of the "Claims" asserted against the Executives and Employees and Starr's agreement to pay Defense Costs. The Defense Costs are within the limits of liability provided by the Policies, and the full amount of the Defense Costs should be paid to PSI.

51.     PSI has cooperated with Starr and responded to Starr's wrongful denials and reductions in a timely manner. Starr's continued delay and refusal to pay Defense Costs violates

not only the Policies, but also the requirements of good faith handling and settlement of insurance claims.

52.      Starr's incorrect coverage positions and factual and legal inaccuracies forced PSI to institute the instant action, and have caused PSI to incur further attorney's fees to secure the coverage it is contractually entitled to and for which Starr collected substantial premiums. Starr's improper claims handling and attempts to shirk responsibility for its contractual obligations without basis demonstrates Starr favoring its own financial interests to the detriment of its policyholder, PSI.

## COUNT I:  DECLARATORY JUDGMENT

53.      PSI repeats and realleges the allegations of paragraphs 1 through 52 as if set forth fully herein.

54.      The Policies set forth the terms and conditions of the insurance contracts between PSI and Starr, and establish that Starr owes duties to PSI, including the duty to reimburse for Defense Costs incurred defending the Claims covered by the Policies.  Further, the clear language of the Policies does not allow Starr to impose billing guidelines after-the-fact or to seek improper deductions to Defense Cost payments.  Nevertheless, Starr has refused to comply with the express terms and plain language of the Policies.

55.      As a result of Starr's improper and incorrect delay and refusal to pay Defense Costs under the Policies, PSI has and will continue to incur costs and attorney's fees to address Starr's meritless denials of coverage.

56.      An actual and justifiable controversy presently exists between PSI and Starr regarding the obligations of Starr to pay claims under the terms of the Policies.

57.      PSI is entitled to a declaration that the NASA OIG Claim and U.S. Attorney Civil Claim constitute "Claims" under the clear language of the Policies and that Starr is obligated to pay all outstanding and future Defense Costs associated with the Claims.

## COUNT II:  BREACH OF CONTRACT

58.     PSI repeats and realleges the allegations of paragraphs 1 through 57 as if set forth fully herein.

59.     The Policies set forth the terms and conditions of the insurance contracts between PSI and Starr, including Starr's duty to pay Defense Costs for "Claims" covered by the Policies. Despite the plain language of the Policies, Starr has improperly and incorrectly delayed and refused to pay Defense Costs under the Policies.  Starr has made only partial payments toward the Defense Costs of the Individuals.  Starr has also refused to pay any Defense Costs incurred by PSI.  Starr continues to take the position that there are no "Claims" against PSI, and ignores that the Defense Costs incurred by PSI are necessary not only to defend PSI, but to coordinate PSI and the Individuals' collective response to the NASA OIG Claim and the U.S. Attorney Civil Claim.  Indeed, even if there were no "Claims" against PSI (which there are), such Defense Costs would still be covered as expenditures reasonably related to the defense of the Individuals for whom Starr has already acknowledged coverage in connection with the Claims.

60.     Starr has breached the contracts with PSI, and Starr's actions and conduct, as described herein, are wholly inconsistent with the terms and conditions of the Policies.

61.     As a direct and proximate result of Starr's breach of its obligations under the Policies, PSI has suffered damages and will suffer additional damages in the future.

## COUNT III:  BREACH OF THE OBLIGATION OF GOOD FAITH
## AND FAIR DEALING

62.     PSI repeats and realleges the allegations of paragraphs 1 through 61 as if fully set forth herein.

63.     By selling the Policies to PSI, and collecting substantial premiums for the coverage provided, Starr assumed a duty of good faith and fair dealing toward PSI.

64.     Each of the Policies contains an implied promise that Starr would deal fairly and in good faith with PSI, and would do nothing to injure, frustrate, or interfere with PSI's right to receive the benefits of the Policies.

65.     Starr has an obligation to refrain from taking any action that would deprive PSI of the benefits of the Policies or that would cause undue hardship or harm to PSI.

66.     Starr has breached its duties of good faith and fair dealing by engaging in conduct calculated to further its own economic interests at the expense of its policyholder, PSI.

67.     In addition, Starr breached its duties of good faith and fair dealing by, among other things:

(a) improperly refusing to pay Defense Costs based on the assertion that notice was provided on February 24, 2012, despite previously acknowledging that Starr actually received notice on February 10, 2012 and the language of the notice provisions in the Policies;

(b) incorrectly asserting that the NASA OIG Claim and the U.S. Attorney Civil Claim are not "Claims" under the Policies and delaying and improperly refusing to pay Defense Costs, despite the language of the Policies and previously acknowledging that the investigations are "Claims";

(c) wrongfully attempting to impose billing guidelines for Defense Costs already incurred, even though Starr never provided these purported guidelines to PSI or PSI's counsel, and improperly attempting to alter the language of the Policies by unilaterally imposing such billing guidelines after the issuance of the Policies;

(d) improperly seeking to deduct amounts from payments due to PSI based on the incorrect application of facts and policy language;

(e) wrongfully compelling PSI to initiate litigation to recover amounts due under the Policies, after failing to respond to numerous letters addressing Starr's incorrect positions;

(f) failing to adhere to custom and practice in the insurance industry; and

(g) ignoring pertinent provisions in the Policies.

68.     The positions Starr has taken regarding the Policies are not reasonable in view of the language of the Policies, the previous conduct and positions taken by Starr, and the custom and practice of the insurance industry.  Starr has violated its duties to act reasonably and in good faith, to abstain from deception, and to practice honesty and equity in its dealings with PSI.

69.     Starr has economic incentives to disregard its good faith obligations and to treat its policyholders unfairly in such disputes. Starr's economic incentives include: (a) the cumulative interest earned on policyholders' premiums and reserves during the periods of dispute; (b) the discounts extracted from policyholders in compromise settlements of the disputes; and (c) the extra cash flow available to Starr by delaying and failing to make payments under the Policies in a timely fashion.

70.     Starr has breached its duties of good faith and fair dealing owed to PSI. Starr's duties of good faith and fair dealing continue during the pendency of this case. PSI reserves the right to seek leave of Court to amend this complaint at such time as it may ascertain other acts and omissions constituting such breaches.

71.     As a direct and proximate result of its bad faith conduct, Starr has deprived PSI of the benefit of the coverage provided by the Policies (for which Starr received substantial premiums), and PSI has suffered actual damages in an amount to be determined in this litigation, including, but not limited to, attorney's fees and costs incurred in connection with this litigation, and other losses.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, PSI respectfully requests judgment as follows:

a.     With respect to Count One, an order declaring that the NASA OIG Claim and the U.S. Attorney Civil Claim constitute "Claims" under the Policies and that Starr is obligated to immediately pay all outstanding costs and damages, and continue to pay for Defense Costs incurred in PSI's defense of the Claims;

b.     With respect to Count Two, a ruling that Starr has breached its contracts with PSI, and an award of compensatory damages, including full general and consequential damages, and attorney's fees and costs under Va. Code § 38.2-209(A), in an amount to be determined for Starr's breaches of the Policies;

c.     With respect to Count Three, a ruling that Starr has breached its contracts with PSI in bad faith, and an award of

compensatory damages, including full general and consequential damages, attorney's fees and costs under Va. Code § 38.2-209(A), in an amount to be determined for Starr's bad faith conduct; and

d.   With respect to all Counts, that PSI be awarded pre-judgment and post-judgment interest, according to law; attorney's fees, costs and expenses for bringing this action; and such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

PSI demands trial by jury of any and all issues properly triable by a jury in this action.

Dated: June 21, 2013

Respectfully Submitted,

Justin F. Zavella (Bar No. 48489)
John A. Gibbons (*pro hac vice – pending*)
Omid Safa (*pro hac vice – pending*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200